On Rehearing
On November 12, 1986, 502 So.2d 396, this court unanimously, without opinion, affirmed this cause. The appellant, through counsel, filed an application for rehearing and a motion under Rule 39(k) A.R.A.P. requesting an opinion of this court and consideration of the issues presented therein.
Because of this, and the unique nature of the appellant's request, the memorandum circulated to each member of the court for conference of November 4, 1986, which resulted in the unanimous affirmance by this court on November 12, 1986, is hereinafter quoted verbatim.
"Tracy Garrard Allen was indicted on two charges of robbery in the first degree. The appellant entered pleas of not guilty and not guilty by reason of insanity to both charges, which were consolidated for trial. The jury found the appellant guilty on both charges and he received a 20 year sentence on each charge.
"Marty Gilbert testified that on the morning of December 19, 1984, she was working at a law office in Tuscumbia, Alabama. Sometime between 10:00 and 10:30 a.m., the appellant came into the office. He had a gun and demanded money and her rings. The appellant took $20.00 from Gilbert's purse and five of her rings. Later, Gilbert picked the appellant out of a photographic lineup.
"Jane Jordan, the owner of J.J.'s Market in Sheffield, testified that the appellant came in her store at approximately 10:30 on the morning of December 19, 1984. The appellant had a gun and demanded money from the cash register. Jordan gave him between $250 and $300. She also positively identified the appellant in a photographic lineup.
 "I
"The appellant contends his motion for new trial should have been granted because his defense proved that he was insane at the time these offenses were committed. The appellant presented several witnesses at trial in support of his claim of insanity.
"Lanny Jackson, an officer with the Lauderdale County Sheriff's Department, testified that he picked up the appellant pursuant to a probate order sometime in December, 1984. The appellant's mother assisted him in locating the appellant. When the appellant was located, he was taken to the 400 Unit at ECM Hospital. *Page 391 
"Pearline Ford stated that she had known the appellant for approximately seven years and had observed his conduct during that time. Ford accompanied the appelant's mother to the probate office where a pick-up order for the appellant was obtained. In Ford's opinion, the appellant was insane.
"Carnelita Elaine Johnson testified that she has known the appellant since 1980. She taught the appellant in adult education classes and had been in the appellant's home on an almost daily basis. She stated that the appellant would be normal one day and irrational the next day. In December of 1984, Johnson said the appellant's mind snapped and he began to think people were out to get him. Johnson's opinion was that the appellant is insane.
"William Duncan, the Probate Judge of Lauderdale County, testified the appellant's mother contacted him in December of 1984 concerning a petition for a pick-up order for the appellant. The appellant's mother told Judge Duncan that the appellant had been carrying a gun, writing bad checks and threatening others.
"After talking with the appellant's mother, Duncan issued a pick-up order for the appellant. On December 7, 1984, the appellant was located and taken to the psychiatric ward at Riverbend Medical Center.
"After receiving a letter from Dr. Joseph Glaister, Duncan dismissed the insanity warrant against the appellant. In Glaister's letter, he stated that the appellant was not psychotic or mentally ill but was a very dangerous sociopath.
"William Allen, the appellant's father, testified that the appellant became violent and began making threats toward him in November and December of 1984. The appellant wouldn't make sense when he talked and Allen thought the appellant was losing his mind. Allen stated the appellant was acting like a 'wild man' the night before the robberies.
"Joan Pugh, the appellant's mother, testified that the appellant had been abnormal since he was four years old. She stated that the appellant couldn't stay in school because of his behavior problems and that she had sought help for the appellant's problems at places such as the Child Development Center at the Meharry Medical College in Nashville, Tennessee, the Adolescent Center in Eufaula and Hillcrest Hospital in Birmingham. Pugh said the appellant had also been placed in the psychiatric ward at Kilby Prison when he was there. The appellant got out of prison in June, 1984 and seemed to be doing well when he was on medication.
"In November of 1984, Pugh began having problems with the appellant. Pugh was unable to control the appellant and he would curse her and lose his temper.
"At this time, the appellant became paranoid. He would sleep with a knife and with all of the lights on. He would follow Pugh everywhere in the house.
"Pugh obtained an insanity warrant for the appellant after people began telling her things about the appellant. Once the appellant was placed in jail, he was separated from the others. He would not eat the food at the jail because he believed it was being poisoned. The appellant became violent and made attempts on his own life. In Pugh's opinion, the appellant was insane.
"The deposition of Dr. Clifford Hardin was admitted into evidence. Dr. Hardin testified that he is a psychiatrist and he examined the appellant on April 9, 1985. At that time the appellant was psychotic and diagnosed as a paranoid schizophrenic. Hardin recommended medication for the appellant.
"Hardin testified that the appellant told him he had taken LSD before the robberies were committed. He stated that LSD causes a person to become psychotic. Thus, Hardin concluded that the appellant was suffering from a self-induced psychosis at the time when the robberies were committed.
"Although Hardin couldn't be sure the appellant had not been psychotic prior to December 19, 1984, he felt the appellant was a borderline psychotic and that his *Page 392 
ingestion of the LSD pushed him over the edge. However, Hardin stated that a person could be psychotic and still be responsible for his own actions. In his opinion the appellant's voluntary and recreational ingestion of the LSD, which caused the psychosis, made him responsible for his own actions.
"Hardin stated that he had '. . . serious doubts as to whether [the appellant] would have been so mentally ill as not to be able to tell right from wrong and not be responsible for his actions if he had not voluntarily taken that agent that causes a psychosis.' (R. 136). Hardin testified that it was 'most unlikely' that the appellant's actions were the product of a mental illness under Alabama law.
"The appellant testified against the advice of his attorney. He stated that he quit taking his medication in November of 1984. He stated he began hearing voices which told him he was Jessie James or Al Capone and that he had to kill his mother. The appellant said he became paranoid at this time.
"The appellant said he took pills sometime before the date of the robberies but denied taking LSD. He doesn't remember if he committed the robberies or not.
"The insanity defense has been thoroughly discussed by this court. See Cunningham v. State, 426 So.2d 484 (Ala.Crim.App. 1982). Only a few basic principles need be stated here.
"Each person, over age 14, who is accused of a crime, is presumed to be sane and the burden of proving insanity is on the accused. Ala. Code § 15-16-2 (1975). The accused's insanity must be proved by a preponderance of the evidence and to the reasonable satisfaction of the jury. Cunningham, supra. Great weight must be given to the jury's verdict on this issue unless the evidence of the accused's insanity is overwhelming and undisputed. Cunningham, supra.
"The evidence of the appellant's insanity was not overwhelming and uncontradicted. Dr. Hardin testified that the appellant's voluntary ingestion of LSD caused his psychosis at the time of the robberies. His psychosis was self-induced.
"Voluntary intoxication due to drugs is not a defense to a criminal charge. Foust v. State, 414 So.2d 485 (Ala.Crim.App. 1982); Lister v. State, 437 So.2d 622 (Ala.Crim.App. 1983).
"The jury's verdict concerning the issue of insanity is supported by substantial evidence. Thus, we have no authority to overturn their verdict. Cunningham, supra. The appellant's motion for a new trial was properly denied."
The above is released as and for the opinion of this court for the information of the appellant and his attorneys in this cause and by way of information to the Bench and Bar of the State of Alabama. Because many, many cases are affirmed without opinion by this court, we are of the view that this be released in this cause to illustrate the manner in which "no opinion" cases are handled by this court. In such cases, the briefs of parties are attached, as in this cause, and the memorandum circulated to each member of the court.
Nevertheless, this court is still of the opinion that, under the facts of this cause and the legal issues involved, a formal opinion of this court is not warranted. We release the above for information purposes.
MOTION DENIED, APPLICATION OVERRULED, OPINION ISSUED, AFFIRMED.
All the Judges concur.
McMILLAN, J. in result only. *Page 393