[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 1288 
The appellant was indicted for three counts of capital murder as follows:
 ". . . STEVEN ALLEN THOMPSON, whose name is unknown to the Grand Jury, other than as stated, did intentionally cause the death of Robin Balarzs, by striking her with his fist and by dragging her behind an automobile, either or both of which acts resulted in the aspiration of stomach contents and suffocation of the said Robin Balarzs, and STEVEN ALLEN THOMPSON, whose name is unknown to the Grand Jury other than as stated, caused said death during the time that STEVEN ALLEN THOMPSON, whose name is unknown to the Grand Jury other than as stated, was in the course of committing a theft of One (1) dollar bill in lawful currency of the United States, and One (1) ring, the property of Robin Balarzs, by the use of force against the person of Robin Balarzs, with intent to overcome her physical resistance or physical power of resistance, while the said STEVEN ALLEN THOMPSON, whose name is unknown to the Grand Jury other than as stated, was armed with a deadly weapon, a knife, in violation of § 13A-5-40(a)(2) of the Code of Alabama of 1975, against the peace and dignity of the State of Alabama. "COUNT 2:
 ". . . STEVEN ALLEN THOMPSON, whose name is unknown to the Grand Jury other than as stated, did intentionally cause the death of Robin Balarzs, by striking her with his fist and by dragging her behind an automobile, either or both of which acts resulted in the aspiration of stomach contents and suffocation of the said Robin Balarzs, and STEVEN ALLEN THOMPSON, whose name is unknown to the Grand Jury other than as stated, caused said death during the abduction of Robin Balarzs by STEVEN ALLEN THOMPSON, whose name is unknown to the Grand Jury other than as stated, with intent to inflict physical injury upon her or to violate her sexually, in violation of § 13A-5-40(a)(1) of the Code of Alabama of 1975, against the peace and dignity of the State of Alabama. COUNT 3:
 ". . . STEVEN ALLEN THOMPSON, whose name is unknown to the Grand Jury other than as stated, did intentionally cause the death of Robin Balarzs, by striking her with his fist and by dragging her behind an automobile, either or both of which acts resulted in the aspiration of stomach contents and suffocation of the said Robin Balarzs, and STEVEN ALLEN THOMPSON, whose name is unknown to the Grand Jury other than as stated, caused said death during the time that STEVEN ALLEN THOMPSON, whose name is unknown to the Grand Jury other than as stated, a male, was engaging, or attempting to engage in sexual intercourse with Robin Balarzs, a female, by forcible compulsion, in violation of § 13A-5-40(a)(3) of the Code of Alabama of 1975, against the peace and dignity of the State of Alabama."
The appellant pleaded not guilty and not guilty by reason of mental disease or defect. The jury found the appellant guilty of the capital offenses charged in the indictment and, following a sentencing hearing, recommended life imprisonment without parole by a vote of eight to four. Thereafter, the trial court sentenced the appellant to death by electrocution.
The trial judge in his sentencing order outlined the facts surrounding this shocking and vicious crime:
 "The victim, Robin Balarzs, was engaged to marry David Roberts, a longtime friend of the defendant. On May *Page 1289 
11, 1984, David Roberts was absent from Huntsville due to military service. Defendant was aware of this absence. On that day defendant went to the home in Huntsville where Robin Balarz resided with her parents and her young child. The parents and the child were also out of town. Robin and her friend Cindy McElroy were at the residence. Defendant, Robin and Cindy engaged in normal conversation and defendant slept on a sofa while the girls retired to separate bedrooms. Early on the morning of May 12th defendant left the residence. Cindy McElroy left at a later time. Cindy noticed no unusual behavior on the part of the defendant.
 "Defendant was absent without leave from the Navy and had need for money and goods which he could convert to cash. He planned to return to the Balarzs household to feloniously take money, gold or silver. In his planning defendant bought tape, bandages and other items with which to bind Robin. On his arrival in the night of May 12, 1984, defendant entered the household on invitation of his friend and followed a course of conduct which can be described as beyond human comprehension in its vileness. Defendant bound and gagged Robin with a sock, bandage, rope and tape he had brought into her home with premeditated design. He cut her clothes from her person and beat her with his fists. He took a meager $1.00 bill from her purse (although at some point he also took her engagement ring). He stuffed a sock in her mouth. He cut her with a knife. He positioned his rental vehicle near the garage to facilitate her removal from the residence. He made some effort to conceal the blood and physical tracings of his acts of brutality, placed Robin, still alive, in the vehicle, left the home and drove to secluded Green Mountain, a rugged area in Huntsville, Madison County. There, he proceeded to brutalize Robin Balarzs in a manner almost unspeakable in its nature, character and extent. Defendant had sexual intercourse upon her, shoved a large knife into what he thought to be her vagina, bound her breasts with a rope, tied her to the vehicle and dragged her through mud, over rocks and on pavement for a distance in excess of 3000 feet. At some point he pulled and shaved her hair with a razor especially purchased. He stabbed her about her breasts and cut her with the knife.
 "Robin Balarzs died during her ordeal. Some of the atrocities were against her corpse.
 "The defendant realized that left in the Balarzs home were items which would reveal his crimes, if not his identity. He returned to the residence for the purpose of securing these items, leaving Robin Balarzs on Green Mountain.
 "While defendant was attempting to re-enter the Balarzs home David Roberts returned. Seeing David drive up to the residence, defendant evaded detection and drove away to spend the rest of the night in his vehicle.
 "David Roberts entered the home and noticed signs of the defendant's depravity. He contacted neighbors and friends of Robin, called hospitals and tried to locate her. Finally, David Roberts called Huntsville Police Department and investigation into the case began. David recalled seeing defendant's vehicle parked near the residence and an alert was dispatched on defendant by radio. At that time it was in connection with a missing person report. In the early morning of May 13, 1984, two uniformed officers saw defendant in his vehicle and stopped him. Defendant's vehicle was dirty and damaged and defendant had what appeared to be blood and mud about his person. Defendant was properly advised of his constitutional rights, taken into custody, removed to police headquarters and questioned. After first denying knowledge of the fate of Robin Balarzs, defendant made statements admitting his activities and led an officer to the scene atop Green Mountain. Robin's battered body was found. Her parents and David Roberts were advised that she was dead." *Page 1290 
 I
The appellant contends that a material variance existed between the allegations in the indictment as to the means of death and the proof at trial. He alleges that his rights to due process were violated thereby. The indictment charges in each count that the appellant struck the victim with his fists and dragged her behind an automobile, "either or both of which acts resulted in the aspiration of stomach contents and suffocation" which caused the victim's death. The appellant bases his argument on the testimony of Dr. Joseph Embry, who performed the autopsy and stated that he believed that most of the injuries inflicted were post-mortem. Dr. Embry testified that the only trauma that he believed the victim suffered while she was alive was a bruise to her neck, which appeared to have been caused by a rope or some ligature, and bruises on her chest, thighs, and calves. However, he noted that because of the extensive tears of her forehead and cheeks, she could have been beaten previously, but the bruises would have been obscured. He testified that the victim died apparently as a result of being strangled with a rope which caused her to aspirate and vomit into her lungs, resulting in a death by asphyxia, or suffocation.
The appellant stated in his second confession that he wrapped a rope around the victim's neck and applied enough pressure "to let her know I wasn't messing around." The victim then grabbed for the rope and told the appellant that he didn't "have to do this." The appellant stated that he began hitting the victim in the back of the head and that she hit the floor and apparently "busted" her nose. After gagging her, he asked if she had any silver, gold, or money and she shook her head to indicate that she did not. He then removed the gag and noticed that her lips were turning purple. Blood, hair, and an unknown stain, which appeared to be vomit, were found in the hall, kitchen, down the stairs, and in the garage. The appellant stated that after removing her clothes, he drug the victim down the basement stairs to his car. He said she moaned and groaned on the way to Green Mountain and was bleeding and vomiting when he got her out of the car. Thereafter, he said, he cut, raped and dragged her behind his car. The appellant's confession may be used to help satisfy the jury that a prima facie case was established by the State. Marvin v. State, 407 So.2d 576, 579
(Ala.Cr.App. 1981).
The actual point at which the victim died is unknown. However, it is clear that these acts were all part of the same atrocious transaction, which resulted in the victim's death by suffocation. Moreover, the record indicates that Dr. Embry testified that any trauma or shock to the body which results in the lack of air is a common cause of vomiting. Thus, Dr. Embry's testimony was not completely dispositive of this issue and there was ample testimony from which the jury could have concluded that the victim died from the alternative averment of "beating her with his fists." See Vaughn v. State, 236 Ala. 442,183 So. 428, 430 (Ala. 1938) (no fatal variance was found where indictment alleged death by striking with a blunt instrument or means unknown and evidence showed that death was caused by pistol shot wound); Hunter v. State, 335 So.2d 194,197 (Ala.Cr.App. 1976), cert. denied, 335 So.2d 203 (Ala. 1976), (no variance where indictment alleged that the victim was killed by being stabbed by a knife and toxicologist testified to death by loss of blood and shock due to wounds suggesting blunt force and others suggesting a tool with a cutting edge);Dawson v. State, 48 Ala. App. 594, 266 So.2d 806, 809
(Ala.Cr.App.), cert. denied, 266 So.2d 812 (Ala. 1972) (no variance, in light of evidence concerning the shooting, where indictment alleged death by gunshot and toxicologist testified that body was badly decomposed but there were no fractures or breaks in the bones nor holes penetrating the skull).
"[N]o variance ought ever to be regarded as material where the allegation and proof substantially correspond, or where the variance was not of a character which could have misled the defendant at the trial." Washington Georgetown R.R. v.Hickey, 166 U.S. 521, 531, 17 S.Ct. 661, 665, 41 L.Ed. 1101
(1897).
Moreover, the actual inquiry *Page 1291 
"is not whether there has been a variance in proof, but whether there has been such a variance as to 'affect the substantial rights' of the accused. The general rule that allegations and proof must correspond is based upon the obvious requirements (1) that the accused shall be definitely informed as to the charges against him, so that he may be enabled to present his defense and not be taken by surprise by the evidence offered at the trial; and (2) that he may be protected against another prosecution for the same offense."
Berger v. United States, 295 U.S. 78, 82, 55 S.Ct. 629, 630,79 L.Ed. 1314 (1935).
 "In order to be valid an indictment must: (1) show the accused what to prepare a defense against; (2) identify the offense so that he is tried for the same charge that was brought before the grand jury; (3) protect somewhat against double jeopardy; and (4) give the court the means to accept or reject the verdict, pronounce judgment, and pass sentence. Baker v. State, [472 So.2d 700, 702 (Ala.Cr.App. 1985)]; Bowens v. State, 309 So.2d 850 (Ala. 1975); Sanders v. State, 278 Ala. 453, 179 So.2d 35 (1965)."
Talley v. City of Clanton, 495 So.2d 1165, 1167
(Ala.Cr.App. 1986). See also § 15-8-25, Code of Alabama (1975).
The appellant admitted committing each of these acts upon the victim. Aside from his defense of insanity, he raised a defense to establish that, although he was guilty of murder, the murder was not committed during the commission of the other alleged felonies, and therefore he was not guilty of the capital offense. There was never any denial of the beating, strangling, stabbing, cutting, or dragging; moreover, they were admitted by one of the appellant's defense lawyers during his opening statement. Thus, the appellant clearly had notice of the charged offense. See Johnson v. State, 508 So.2d 1192
(Ala.Cr.App. 1986); Duren v. State, 507 So.2d 111, 112-14
(Ala.Cr.App. 1986), affirmed, 507 So.2d 121 (Ala. 1986), cert. denied, ___ U.S. ___, 108 S.Ct. 249, 98 L.Ed.2d 206 (1987). InSkidmore v. State, 530 S.W.2d 316, 321 (Tex.Cr.App. 1975), the court found no variance between the cause of death alleged in the indictment and the evidence, in light of the appellant's confession that his accomplice pushed the deceased over an embankment. The indictment in that case alleged that death was caused "by pushing, shoving and throwing him over an embankment;" whereas the medical expert testified that, in his opinion, the victim died "due to a fall [during which] his head impacted with a certain amount of speed, enough to render a person unconscious, until he couldn't help himself and that with the head on the ground he would be unable to breathe and asphyxiated." The examiner found the cause of death to be asphyxiation.
Because the indictment specified the first and last of the series of acts which the appellant admitted to committing, he was clearly apprised of the crime with which he was charged. Because the State proved that the victim died of asphyxia and established sufficient proof that the asphyxia was a result of being beaten and, further, because the appellant admitted to committing the acts, "we are unable to find anything in the facts . . . or in the record from which it reasonably can be said that the proof operated to prejudice his case, or that it came as a surprise." Berger v. United States, 295 U.S. 78, 83,55 S.Ct. 629, 631. " '[N]o variance ought ever to be regarded as material where the allegation and proof substantially correspond, or where the variance was not of the character which could have misled the defendant at the trial.' " Id. See also Ex parte Lundy, 539 So.2d 322 (Ala. 1988).
 II
The appellant argues that the trial court erred in refusing to instruct on the prosecution's burden of proof as requested by the appellant. The record indicates that, after the jury had begun their deliberations, they submitted a question to be answered by the trial court. Defense counsel submitted two written requested charges in response to the question. The jury's question was: "Should the single cause of death considered be restricted to striking by a *Page 1292 
fist or dragging behind a car, or is the jury at liberty to call upon all of the evidence to determine the true and factual cause of the aspiration of stomach contents?" The trial court responded:
 "In response to that, it is sufficient if the substance of the charge be proved without regard to the precise instrument used, though the indictment charges a particular weapon; the averment is substantially proved, if it be shown that some other instrument was employed, which occasions a wound of the same kind, as the instrument charged, and the same consequences naturally follow.
 "If the weapon or instrument charged, and that proved, are of the same nature and character, there is no variance between allegation and proof. It is sufficient if the proof agrees with the allegation in its substance and generic character.
 "Where an indictment alleges the means by which an offense is committed, it must be substantially, though not literally proved as alleged."
The appellant's two requested charges stated as follows:
 "I charge you, members of the jury, that if you have a reasonable doubt as to whether the victim died as a result of Steven Allen Thompson's striking her with his fists or dragging her behind an automobile, you must acquit the defendant."
 "I charge you, members of the jury, that under each count of the indictment, in order to convict the defendant of the capital offense charged, the State must prove, beyond a reasonable doubt, that Steven Allen Thompson intentionally caused the death of Robin Balarzs by either striking her with his fists or by dragging her behind an automobile."
The record indicates that after the trial court gave his answer to their question, the jury returned in sixteen minutes with their verdict of guilty as charged under all three counts of the indictment.
There was no error in the trial court's refusal of the defense counsel's requested instructions because the correct principles of law were covered by the trial court's answer to the jury question. "The great particularity required by the common law in setting forth the manner of death and the means or instrument by which it was inflicted frequently has resulted in miscarriage of justice due to variances between allegations and proof." 26 Am.Jur. Homicide § 266. "[M]odern tendencies, as manifested by both legislative and judicial action, are toward a relaxation of the technicalities of the earlier rules." 40 Am.Jur.2d Homicide § 229. "The law does not require precise conformity in every particular where the weapon is alleged but rather substantial proof of the means by which the offense was committed. Matthews v. State, 51 Ala. App. 417, 286 So.2d 91
(1973); Threatt v. State, 32 Ala. App. 416, 26 So.2d 530
(1946)." Trest v. State, 409 So.2d 906, 909 (Ala.Cr.App. 1981).
The trial court's charge given in answer to the jury's question is supported by a long line of cases: "In an indictment for homicide, the means by which the offense charged is committed does not enter into the essence of the crime, is not a constituent element of the offense [sic]. The unlawful and malicious killing, regardless of the means employed, is the criterion. Gaines v. State, 146 Ala. 16, 23, 41 So. 865.
 "Every constituent of murder was averred in the indictment under consideration and 'it is sufficient, if the substance of the charge be proved, without regard to the precise instrument used. Though the indictment charges a particular weapon, the averment is substantially proved, if it be shown that some other instrument was employed, which occasions a wound of the same kind as the instrument charged, and the same consequences naturally follow.' Hull v. State, 79 Ala. 32, 33."
Wesson v. State, 251 Ala. 33, 34, 36 So.2d 361, 362 (Ala. 1948). See Farris v. State, 432 So.2d 538, 541 (Ala.Cr.App. 1983) (no material variance between the indictment describing a glass bottle and proof showing a plastic bottle); Stevenson v. State,404 So.2d 111, 113 (Ala.Cr.App. 1981), cert. quashed,404 So.2d 114 (Ala. 1981), (no material *Page 1293 
variance where indictment charged killing with a pistol and the State proved killing with a shotgun, because the weapons inflict the same type of injury); Weaver v. State,407 So.2d 568, 569 (Ala.Cr.App. 1981) (no variance where the indictment charged killing with a rifle but the proof showed killing with a pistol, because they "both inflict the same character of wound"); Trammell v. State, 298 So.2d 666, 668
(Ala.Cr.App. 1974) (no material variance where indictment charged killing with a bayonet but testimony showed killing with a knife). See also Arnold v. State, 686 S.W.2d 291, 293-94
(Tex.Dist. Ct. App. 1985), affirmed, 742 S.W.2d 10
(Tex.Cr.App. 1987) (no variance where indictment charged murder by stabbing or firearm and medical examiner testified that the fatal wound was inflicted by "cutting"); Phifer v. State,651 S.W.2d 774, 781-82 (Tex.Cr.App. 1983) (no variance where indictment alleged "choking" but the medical examiner testified that the victim was not "choked" in the medical sense of cutting off the air supply to the lungs, rather death was from asphyxiation by "strangulation," which the examiner defined as cutting off the blood flow to or from the brain).
Although the trial court's reference in his instructions were made to instruments or weapons rather than the acts leading to the cause of death, i.e., asphyxiation, " ' "[t]he language of a charge must be given a reasonable construction, and not a strained and unreasonable one." ' "Kennedy v. State,472 So.2d 1092, 1103 (Ala.Cr.App. 1984), affirmed, Ex parte Kennedy,472 So.2d 1106 (Ala. 1985), cert. denied, Kennedy v. Alabama,474 U.S. 975, 106 S.Ct. 340, 88 L.Ed.2d 325 (1985), quoting Harrisv. State, 394 So.2d 96, 100 (Ala.Cr.App. 1981). " 'A trial court will not be put in error for charging on a correct principle of law, though it might not be strictly applicable to the case on trial, unless the natural tendency of the charge is to mislead the jury.' " Coleman v. State, 443 So.2d 1355, 1358
(Ala.Cr.App. 1983), quoting Traywick v. State, 378 So.2d 1196,1197 (Ala.Cr.App. 1979). "The trial court's oral charge must be considered and construed as a whole and in connection with the evidence, and if, when so construed, it asserts a correct proposition applicable to the evidence, then a disconnected part or sentence is not reversible error." Kelley v. State,409 So.2d 909, 915 (Ala.Cr.App. 1981). The trial court's charge, construed in light of the evidence, would have clearly been understood by a reasonable jury.
"Where an indictment alleges the means by which an offense is committed, it must be substantially, though not literally, proven as alleged. Phillips v. State, 68 Ala. 469; Jones v.State, 137 Ala. 12, 34 So. 681; Huckabee v. State, 159 Ala. 45,48 So. 796." Matthews v. State, 51 Ala. App. 417, 286 So.2d 91,93 (Ala.Cr.App. 1973). The trial court's charge covered the correct principles of law.
 "It would be dealing in abstruse legal metaphysics, amounting almost to an absurdity, to hold that one guilty of a crime, such as indicated in the opinion of the Court of Appeals, should go free because the State was unable to prove that life was extinct before the deceased was stomped or because the State was unable to establish that the beating with the fists or the stomping with feet, one or the other or both, was the cause of death. The essence of the charge was proven when either of the means, substantially similar in nature, was shown to have produced the result."
Wesson v. State, supra, 251 Ala. at 35, 36 So.2d at 363.
 III
The appellant argues that the evidence of insanity was overwhelming and uncontradicted. There is a presumption of sanity extending to all persons over the age of 14.Christian v. State, 351 So.2d 623 (Ala. 1977). Insanity is an affirmative defense and the burden of proof rests upon the appellant to establish legal insanity by a preponderance of the evidence and to the reasonable satisfaction of the jury.Herbert v. State, 357 So.2d 683-689 (Ala.Cr.App. 1978), cert. denied, 357 So.2d 690 (Ala. 1978).
The appellant, in support of his defense, presented the testimony of his father, who *Page 1294 
stated that the appellant had suffered behavioral problems since childhood. He testified that at times the appellant would be quite belligerent and, at other times, he would behave in a kind and loving manner. Thus, he testified at trial that he believed that his son suffered from multiple personalities. The appellant also presented the testimony of a psychologist, who testified that multiple personalities is a recognized mental illness; however, he had never examined the appellant.
 "Unusual or weird behavior alone cannot be equated with mental insanity. Carey v. State, 361 So.2d 1176, 1179 (Ala.Cr.App. 1978). Evidence that the accused had sometimes acted a little 'peculiar' or testimony that 'he was not normal', 'that he was not in his right mind', 'looked like he was insane', or did not act 'right' is not sufficient, in and of itself, to meet the test laid down by case law for establishing an insanity defense. Weeks v. State, 342 So.2d 1335 (Ala.Cr.App. 1977)."
Meredith v. State, 370 So.2d 1075, 1078 (Ala.Cr.App. 1979), writ denied, 370 So.2d 1079 (Ala. 1979).
The appellant's father also testified that, when the appellant was a teenager, he declared him ungovernable and took him to a detention home. He was subsequently enrolled in Retreat Hospital, where he remained for approximately two months. His father testified that, following his release from the hospital, his behavior was improved. The appellant's commitments do not alone prove that he was insane. Cf.Evans v. State, 410 So.2d 143, 146 (Ala.Cr.App. 1981) ("The mere fact that an accused had been recently released from a mental institution before the commission of the crime charged and had a history of civil commitments to hospitals for mental and psychological reasons does not automatically indicate that the accused must be incompetent to stand trial"). "A defendant does not, by evidence that he was 'subject to spells of insanity from time to time', raise a presumption that he was insane when he committed the homicide so as to shift the burden of proving his sanity to the State. Talbert v. State, 140 Ala. 96,37 So. 78 (1904)." Carey v. State, 361 So.2d 1176, 1178
(Ala.Cr.App. 1978), writ denied, 374 So.2d 332 (Ala. 1979).
The record indicates that the appellant was examined by a lunacy commission at the Taylor Hardin Secure Medical Facility. Two of the psychiatrists found no reason to believe that the appellant was not responsible for his behavior at the time of the alleged offense. A third psychiatrist, however, determined that the appellant might not have had a full capacity at the time of the offense to appreciate the criminality of his behavior or to conform his behavior to the requirements of law. He based this opinion on the appellant's ascertion that he was under the influence of self-administered intoxicants. The commission concluded, "In regard to Mr. Thompson's probable state of mind at the time of the alleged offense, none of the examiners who had contact with Mr. Thompson found any evidence of any major psychiatric disturbance." Voluntary intoxication due to drugs is not a defense to a criminal charge. Lister v.State, 437 So.2d 622 (Ala.Cr.App. 1983). Although the appellant alleges that he was under the influence of LSD at the time of the offense, we note that where an appellant alleged that he was under the influence of LSD at the time of the offense, and a psychiatrist testified that his voluntary ingestion of LSD caused a psychosis, this court found that his psychosis was self-induced and no defense to a criminal charge. Allen v.State, 502 So.2d 389, 391-92 (Ala.Cr.App. 1986).
Additionally, it should be noted that, although it appears from the record that the appellant was examined by another psychiatrist prior to trial, that psychiatrist did not testify.
"The question of insanity at the time of the commission of the crime is a matter to be determined by the jury from a consideration of all the evidence." Herbert v. State, supra at 689. Cindy McElroy testified that she observed the appellant at the victim's house on the night before the offense, and she stated that his behavior was normal. Ed Poole testified that he and the appellant were together on the day of the *Page 1295 
offense from 6:30 a.m. until 5:15 p.m. He testified that they spent most of the day fishing, during which time they drank a twelve-pack of beer and smoked one joint of marijuana. Thereafter, they played pool and drank approximately three more beers. He did not see the appellant take any LSD and stated that, although the appellant appeared intoxicated, he did not get "real drunk" or "out of control." He further testified that the appellant was driving properly and maintaining a normal conversation. The officers who stopped the appellant on the following morning testified that he did not appear to be under the influence of any intoxicant, rather that his behavior and speech were normal.
Despite the heinousness of the appellant's acts during the commission of the offense, there is no evidence to establish that he was insane.
 " 'Emotional insanity or moral obliquity will not sustain a plea of insanity.' Rowe v. State, 243 Ala. 618, 624, 11 So.2d 749 (1943). Moral obliquity 'has no recognition in the law of this state as an excuse for crime.' Hall v. State, 208 Ala. 199, 200, 94 So. 59 (1922). '[T]hat which is sometimes called "moral", or "emotional insanity", savors too much of a seared conscience or atrocious wickedness to be entertained as a legal defense.' Boswell v. State, 63 Ala. 307, 321 (1879). 'Moral idiocy' does not qualify under the defense of insanity. Clayton v. State, 45 Ala. App. 127, 131, 226 So.2d 671
(1969).
 " 'Where by "moral insanity" is meant a mere mental depravity, or moral insanity, so-called, which results not from any disease of the mind, but from a perverted condition of the moral system, where the person is mentally sane, this does not exempt one from responsibility for crimes committed under its influence.' 22 C.J.S. Criminal Law, Section 63 (1961)."
Brackin v. State, 417 So.2d 602, 604 (Ala.Cr.App. 1982).
 IV
The appellant argues that he should have been sentenced to life without parole rather than death because, he says, the trial court erred in its findings regarding the aggravating and mitigating circumstances.
 A
The trial court did not err in finding as an aggravating circumstance that the capital offense was committed while the appellant was engaged in the commission of, or in an attempt to commit, rape, robbery, or kidnaping. The appellant argues that because the evidence showed that the victim was dead at the time of the rape, the trial court erred in its finding. However, the evidence presented at trial did not prove that the victim was dead at the time of the rape; rather, the coroner testified that, although he believed she was deceased at that time, he could not be certain. Therefore, a jury question was presented and, by their verdict, it is clear that the jury found that the murder did occur during the course of committing or attempting to commit a rape in the first degree. According to § 13A-5-45(e), Code of Alabama (1975):
 "(e) At the sentence hearing the State shall have the burden of proving beyond a reasonable doubt the existence of any aggravating circumstances. Provided, however, any aggravating circumstance which the verdict convicting the defendant establishes was proven beyond a reasonable doubt at trial shall be considered as proven beyond a reasonable doubt for purposes of the sentence hearing."
Therefore, the trial court correctly considered this aggravating circumstance.
Furthermore, the statute which provides for this aggravating circumstance, § 13A-5-49(4), Code of Alabama (1975), states:
 "(4) The capital offense was committed while the defendant was engaged or was an accomplice in the commission of, or an attempt to commit, or flight after committing, or attempting to commit, rape, robbery, burglary or kidnaping." (Emphasis added).
The evidence at trial firmly establishes that the appellant originally went to the *Page 1296 
victim's house in order to commit a robbery. He confessed that he took a one-dollar bill from the victim's purse while she was still gagged and able to indicate that she had no money. He subsequently took her engagement ring. He further indicated in his statement that, after he had placed her in the back of his car and was en route to Green Mountain, she was moaning and groaning. Thus, there was evidence that she was alive during the robbery and the kidnaping. Because § 13A-5-49(4) uses the disjunctive in listing these felonies, this aggravating circumstance was clearly shown to exist.
 B
The trial court did not err in finding as an aggravating circumstance that this offense was especially heinous, atrocious, or cruel compared to other capital offenses. The appellant bases this argument on Dr. Embry's testimony that the majority of the victim's wounds appeared to be post-mortem. However, as previously noted, he testified that he could not be sure of the appellant's time of death. The facts of this murder, as demonstrated through the appellant's statement as well as through the other evidence, show a string of torturous and conscienceless acts. Regardless of the victim's time of death, it is clear from the appellant's confession that he believed that she was alive when he drove her to Green Mountain, after having strangled and beaten her, and dragged her down the steps. Also, there was found at her home also a large amount of the victim's hair which was removed from her scalp by blunt force and other hairs that were cut.
"The aggravating circumstance listed in § 13-11-6(8) was intended to apply to only those conscienceless or pitiless homicides which are unnecessarily torturous to the victim." Exparte Kyzer, 399 So.2d 330, 334 (Ala. 1981).
The trial court, in finding the existence of this aggravating circumstance, noted:
 "The acts of the defendant were heinous, cruel and atrocious beyond rational contemplation. The pain, suffering, terror and fear of Robin Balarzs whether she died early into her ordeal or later, was not due to any desire for humane treatment by the defendant. The nature, character and extent of the wounds found on the body of the victim defy verbal description and can be best seen by reference to photographic evidence admitted on trial. Suffice it to say that positive identification of the victim was difficult. All of this abuse was heaped upon Robin Balarzs by a person she knew and apparently trusted. The acts of defendant were in a manner, and over a period of time, that undoubtedly inflicted an extreme degree of terror, pain and suffering to the victim. No doubt, Robin begged for her death at some point. No doubt, she never begged for pain and degradation. The shockingly inhumane actions of the defendant are more vile than those of the defendant in Dunkins v. State, 437 So.2d 1349
(Ala.Cr.App.), affirmed, 437 So.2d 1356 (Ala. 1983), wherein the rape-murder victim was stabbed sixty-six times."
Because this torturous death clearly qualifies as such a homicide, the trial court properly included this aggravating circumstance as justification of the sentence of death. Exparte Julius, 455 So.2d 984, 987 (Ala. 1984), cert. denied,Julius v. Alabama, 469 U.S. 1132, 105 S.Ct. 817, 83 L.Ed.2d 809
(1985).
 C
The appellant argues that the trial court erred in its finding concerning mitigating circumstances. He bases this argument on the trial court's failure to find as statutory mitigating circumstances that the capital offense was committed while he was under the influence of extreme mental or emotional disturbance; that his capacity to appreciate the criminality of his conduct or to conform his conduct to the requirements of law was substantially impaired; and that his age was 20 at the time of the crime. He argues that the trial court erred in failing to find the following nonstatutory mitigating circumstances: that he had an unhappy upbringing and that he was emotionally disturbed. *Page 1297 
As to the existence of any statutory mitigating circumstances, the trial court found the existence of the mitigating circumstance at § 13A-5-51(1), Code of Alabama
(1975), that the appellant had no significant history of prior criminal activity. He noted that while the age of a criminal defendant is an important consideration, it is not "solely determinative of the existence of a mitigating circumstance." The trial court stated:
 "The capacity of a person to do evil is measured by his understanding and judgment as well as his age. The mere fact of age does not deter the law or justify capital criminal activity. The defendant was of at least average intelligence, had attended high school, served in the Navy and earned a G.E.D. certification. He did not suffer from any major or severe mental disorder. He was mature enough to plot, plan and scheme before, during and after the criminal activities. The age of the defendant does not mitigate against the imposition of death and is not a factor to defendant's advantage."
Although the trial court did consider the appellant's age, he properly found that under the evidence presented, this mitigating circumstance was not sufficiently established.
The trial court further found "that defendant did not act under extreme duress or under the substantial domination of another person" and "that the capacity of the defendant to appreciate the criminality of his conduct or to conform his conduct to the requirements of law was not substantially impaired." The trial court determined "that the capital offenses were not committed while the defendant was under the influence of extreme mental or emotional disturbance." No evidence was presented to show that the appellant lacked the capacity to appreciate the criminality of his conduct or to conform his conduct to the requirements of law. Officer Renfroe testified that the appellant told him that he knew what he was doing the whole time. Furthermore, although there was evidence that the appellant was absent without leave from the Navy, had been writing checks on his sister's account and needed money, and had been kicked out of his father's house, even if this was sufficient to show that the appellant was under the influence of emotional disturbance at the time of the offense, that such circumstance is not sufficient to outweigh the aggravating circumstances; thus, any error was harmless. See Barclay v.Florida, 463 U.S. 939, 103 S.Ct. 3418, 77 L.Ed.2d 1134 (1983) (wherein the United States Supreme Court held that the application of the harmless error rule to the weighing of aggravating and mitigating circumstances in a capital case was constitutional).
As to the existence of any non-statutory mitigating circumstances, the trial court stated:
 "The family of the defendant are productive members of the community. His parents adopted defendant when he was but twelve days old. The relationship between defendant and his father was often traumatic for the father, but he did the best he could to instill a sense of propriety in the defendant. The father and other family members loved him and still love him. The father sought vainly for an explanation for this defendant's actions which were out-of-character for his family, and for help in controlling defendant. Defendant at times showed acts of compassion for others, but at other times refused to comport his conduct to reasonable parental rules. As is too often the case, defendant, while quite young, became involved with alcohol and other drugs which caused the family great concern. The defendant's criminal activity was out of character from a family standpoint because other members of the family are productive, law-abiding and solid. They suffer today and will for the rest of their lives."
Thus, the trial court considered the evidence concerning the appellant's upbringing and alleged emotional disturbance, presented by the testimony of the appellant's father.
No error exists in the trial court's findings as to the aggravating and mitigating circumstances in this case. *Page 1298 
 V
The appellant contends that Alabama's 1981 capital statute is unconstitutional because, he says, it fails to prevent the imposition of the death penalty in an arbitrary and capricious manner, in violation of the Eighth Amendment. He argues that the Alabama statute does not provide "clear and objective standards" that provide "specific and detailed guidance" as required in Godfrey v. Georgia, 446 U.S. 420, 100 S.Ct. 1759,64 L.Ed.2d 398 (1980), and Eddings v. Oklahoma, 455 U.S. 104,102 S.Ct. 869, 71 L.Ed.2d 1 (1982). However, in Proffitt v.Florida, 428 U.S. 242, 96 S.Ct. 2960, 49 L.Ed.2d 913 (1976), the United States Supreme Court upheld the Florida capital murder statute, which contained a list of aggravating and mitigating circumstances similar to that of the Alabama 1981 statute and allowed discretion to the sentencing authority in weighing the aggravating and mitigating circumstances.
The appellant further indicates that arbitrary and capricious results follow from the advisory nature of a jury's recommendation for sentencing. He cites three capital cases, including the one at hand, which were tried in Madison County where the trial court did not accept the jury recommendation of life without parole. However, as noted by the State, there have been many cases throughout Alabama under the 1981 statute in which the judges and juries have agreed as to the proper punishment. See Seawright v. State, 479 So.2d 1362
(Ala.Cr.App. 1985), Bell v. State, 475 So.2d 601
(Ala.Cr.App. 1984), affirmed, 475 So.2d 609 (Ala. 1985), cert. denied, 474 U.S. 1038, 106 S.Ct. 607, 88 L.Ed.2d 585 (1985);Arthur v. State, 472 So.2d 650 (Ala.Cr.App. 1984), reversed on other grounds, 472 So.2d 665 (Ala. 1985); Callahan v. State,471 So.2d 447 (Ala.Cr.App. 1983), reversed on other grounds,471 So.2d 463 (Ala. 1985); Clark v. State, 451 So.2d 368
(Ala.Cr.App. 1984); Waldrop v. State, 459 So.2d 953
(Ala.Cr.App. 1983), affirmed, 459 So.2d 959 (Ala. 1984), cert. denied, 471 U.S. 1030, 105 S.Ct. 2050, 85 L.Ed.2d 323 (1985);Jones v. State, 450 So.2d 165 (Ala.Cr.App. 1983), affirmed,450 So.2d 171 (Ala. 1984), cert. denied, 469 U.S. 873,105 S.Ct. 232, 83 L.Ed.2d 160 (1984); Taylor v. State, 442 So.2d 128
(Ala.Cr.App. 1983); Bush v. State, 431 So.2d 555
(Ala.Cr.App. 1982), affirmed, 431 So.2d 563 (Ala. 1983), cert. denied, 464 U.S. 865, 104 S.Ct. 200, 78 L.Ed.2d 175 (1983). Three cases do not adequately show that sentencing under this statute is capricious.
 VI
The appellant argues that death by electrocution is cruel and unusual punishment in violation of the Eighth Amendment; however, this issue has been decided to the contrary.Ritter v. Smith, 568 F. Supp. 1499, 1525 (S.D. Ala. 1983), affirmed in relevant part, 726 F.2d 1505, 1519 (11th Cir.), cert. denied, 469 U.S. 869, 105 S.Ct. 218, 83 L.Ed.2d 148
(1984) Ex parte Kemmler, 136 U.S. 436, 442-443, 10 S.Ct. 930,932, 34 L.Ed. 519 (1890).
 VII
The appellant argues that the trial court erred in refusing to grant his motion to suppress his statements. He argues that they were involuntarily given; however, he fails to indicate the basis for this claim. During the suppression hearing, the appellant testified that he was neither threatened or abused nor made any promises in return for the statements. He stated, however, that he was under the influence of LSD during that time. He further testified that he had no difficulty talking to the officers or understanding what they were saying. Moreover, although he argues that he was unable to remember all of the events that transpired during the commission of the offense, he remembered making his statements and directing Investigator Renfroe to the victim's body.
Investigator Renfroe, Officer Roberts and Officer Turner all testified that the appellant's behavior was normal, that his speech was coherent, and that he did not appear to be under the influence of any drug.
Additionally, it should be noted that although the appellant does not argue on appeal that he gave his statements without *Page 1299 
having been advised of his Miranda rights, during the suppression hearing and trial he maintained that he was never advised of these rights. However, Officer Roberts testified that he advised the appellant of his rights after stopping him and viewing his driver's license. Officer Turner testified that he heard Officer Roberts do so. Investigator Renfroe testified that, when he arrived, he asked Officer Roberts if he had advised the appellant of his rights and that Officer Roberts responded that he had. He then asked the appellant if he had been advised of his rights and that the appellant responded that he had and that he understood those rights.
 "Where the voluntariness inquiry presents conflicting evidence, great weight must be given to the trial judge's finding of voluntariness. Even when there is credible testimony to the contrary, if the evidence is fairly capable of supporting the inference that the rules of freedom and voluntariness were observed, the ruling of the trial judge need only be supported by substantial evidence and not to a moral certainty. Thompson v. State, 347 So.2d 1371, 1375
(Ala.Cr.App.), cert. denied, Ex parte Thompson, 347 So.2d 1377 (Ala. 1977), cert. denied, 434 U.S. 1018, 98 S.Ct. 740, 54 L.Ed.2d 765 (1978). 'The trial court does not have to accept the testimony of [the] defendant as to the voluntariness of a confession if there is substantial testimony by others sufficient to constitute a predicate for the admission in evidence of the confession.' Bradley v. State, 337 So.2d 47, 50 (Ala.Cr.App. 1976)."
Moore v. State, 415 So.2d 1210, 1214-15 (Ala.Cr.App. 1982), cert. denied, 459 U.S. 1041, 103 S.Ct. 459, 74 L.Ed.2d 610
(1982). See also Neelley v. State, 494 So.2d 669
(Ala.Cr.App. 1985), affirmed, 494 So.2d 697 (Ala. 1985), cert. denied, 480 U.S. 926, 107 S.Ct. 1389, 94 L.Ed.2d 702 (1987). We do not find that the trial court's decision concerning the admissibility of the appellant's statements was contrary to the great weight of the evidence or manifestly wrong. Ex parteSingleton, 465 So.2d 443 (Ala. 1985); Magwood v. State,494 So.2d 124 (Ala.Cr.App. 1985), affirmed, 494 So.2d 154 (Ala.) cert. denied, 479 U.S. 995, 107 S.Ct. 599, 93 L.Ed.2d 599
(1986).
 VIII
In accordance with § 13A-5-53, Code of Alabama (1975), we have reviewed the record, including the guilt and sentencing proceedings, for any error which adversely affected the rights of the appellant, and we have found none. Nor do we find any evidence that the sentence was imposed under the influence of passion, prejudice, or any other arbitrary factor.
The trial court properly found the existence of two aggravating circumstances: that the capital offense was committed while the appellant was engaged in the commission of a rape, robbery, or kidnaping; and that the capital offense was especially heinous, atrocious or cruel compared to other capital offenses. The trial court's reasons for finding these two aggravating circumstances are amply supported by the evidence. See part IV.
The only statutory mitigating circumstance found to exist was the appellant's lack of a significant history of prior criminal activity. The trial court did not find as mitigating circumstances: that the victim was a participant in the appellant's conduct; that the appellant was an accomplice; that the appellant was acting under extreme duress or under the substantial domination of another person; that the appellant's capacity to appreciate the criminality of his conduct or to conform his conduct to the requirements of the law was substantially impaired; that the offenses were committed while the appellant was under the influence of extreme mental or emotional disturbance; or the appellant's age. For discussion on the trial court's refusal to consider those mitigating circumstances complained of by the appellant, see part IV. The trial court also considered the appellant's family and their role in his upbringing as non-statutory mitigating circumstances. The trial court's findings concerning the statutory and non-statutory mitigating circumstances are supported by the evidence. *Page 1300 
The trial judge also considered the jury's advisory verdict of life without parole, before determining that the aggravating circumstances outweighed the mitigating circumstances. The trial court is authorized to reject the jury's recommendation of life without parole when imposing sentence and impose a death sentence. Tarver v. State, 500 So.2d 1232 (Ala.Cr.App.), affirmed, 500 So.2d 1256 (Ala. 1986), cert. denied,482 U.S. 920, 107 S.Ct. 3197, 96 L.Ed.2d 685 (1987). Freeman v. State, [Ms. 8 Div. 200, March 22, 1988] (Ala.Cr.App. 1988). The independent weighing of the aggravating and mitigating circumstances supports the trial court's conclusion and indicates that death was the proper sentence.
Finally, the sentence of death in this case is neither excessive nor disproportionate to the penalty imposed in similar cases, considering both the crime and the defendant. For murder during kidnaping, see Neelley v. State,494 So.2d 669 (Ala.Cr.App. 1985), affirmed, 494 So.2d 697 (Ala. 1986), cert. denied, 480 U.S. 926, 107 S.Ct. 1389, 94 L.Ed.2d 702
(1987); Callahan v. State, 471 So.2d 447 (Ala.Cr.App. 1983), reversed on other grounds, 471 So.2d 463 (Ala. 1985). For murder during rape, see Freeman v. State, [Ms. 8 Div. 200, March 22, 1988] (Ala.Cr.App. 1988); Bradley v. State, 494 So.2d 750
(Ala.Cr.App. 1985), affirmed, 494 So.2d 772 (Ala. 1986), cert. denied, 480 U.S. 923, 107 S.Ct. 1385, 94 L.Ed.2d 699 (1987);Dunkins v. State, 437 So.2d 1349 (Ala.Cr.App.), affirmed,437 So.2d 1356 (Ala. 1983), cert. denied, 465 U.S. 1051,104 S.Ct. 1329, 79 L.Ed.2d 724 (1984). For murder during robbery, seeAcres v. State, [Ms. 3 Div. 843, February 10, 1987] (Ala.Cr.App. 1987); Baldwin v. State, 456 So.2d 117
(Ala.Cr.App. 1983), affirmed, 456 So.2d 129 (Ala. 1984),472 U.S. 372, 105 S.Ct. 2727, 86 L.Ed.2d 300 (1985); Bell v. State,475 So.2d 601 (Ala.Cr.App. 1984), affirmed, 475 So.2d 609 (Ala.), cert. denied, 474 U.S. 1038, 106 S.Ct. 607, 88 L.Ed.2d 585,Bracewell v. State, 475 So.2d 616 (Ala.Cr.App. 1984).
The record is devoid of any indication of plain error. Therefore, the appellant's judgment of conviction and sentence of death are proper. The judgment of the circuit court is affirmed.
AFFIRMED.
All the Judges concur.